UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN PORTER,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants. | Case No. 16-cv-03771-CW   (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. No. 89 |

In a Joint Discovery Letter [Docket No. 89], Plaintiff Ben Porter ("Porter"), Successor-in-Interest to Decedent Haneefah Nuriddin ("Nuriddin"), moves for spoliation sanctions against Defendant City and County of San Francisco ("CCSF") pursuant to Federal Rule of Civil Procedure 37(e). Porter also moves to compel production of all documents responsive to Request for Production ("RFP") Set No. 3, Nos. 14, 16-17, including privileged documents, based on CCSF's failure to produce a privilege log. The court held a hearing on August 23, 2018. Having considered the parties' arguments and submissions, the court grants Porter's motions.

**I. BACKGROUND**

This is a wrongful death action against CCSF and Defendant James Kay Terry ("Terry") arising out of an April 30, 2015 incident at the Zuckerberg San Francisco General Hospital and Trauma Center ("ZSFGH") that resulted in Nuriddin's death. The underlying facts are as follows. Nuriddin was a psychiatric patient at ZSFGH. On the evening of April 30, 2015, ZSFGH staff member Terry escorted Nuriddin across the hospital campus to an ophthalmology appointment. Second Amended Complaint ("SAC") ¶¶ 13-15 [Docket No. 63]. Upon arrival, Terry left Nuriddin unattended and went to speak with the receptionist in the waiting room. *Id*. ¶ 18. Nuriddin left the ophthalmology department sometime during Terry's conversation with the

receptionist. SAC ¶ 18. Terry left the building to try to find Nuriddin, and last reported seeing her standing near a bus stop. *Id*. ¶ 20. However, he did not summon or call for help until sometime later. *Id*.

Terry reported Nuriddin's disappearance to ZSFGH Nurse Mark Okupnik. Deposition of James Kay Terry ("Terry Depo.") (Ex. D) to the Declaration of Briggs Matheson ("Matheson Decl.") at 131:10-134:18 [Docket No. 94-4]. According to documents produced during discovery, at approximately 2:20 p.m., Okupnik called the hospital's on-site desk of the San Francisco Sheriff's Department ("SFSD") to report Nuriddin's disappearance. The call lasted 5 to10 minutes. Timeline for Nuriddin (Ex. D) to the Declaration of Patrick Buelna ("Buelna Decl.") at CCSF_Nuriddin 000450 [Docket No. 92-3]; SFSD Incident Report (Ex. A) at CCSF_Nuriddin 000098 to Matheson Decl. SFSD Deputy Herrera responded to the SFSD dispatch of Okupnik's call at approximately 2:31 p.m. and asked for a case number. CAD Audio Recording of Herrera (Ex. C) to Buelna Decl.; SFSD Incident Report (Ex. A) at CCSF_Nuriddin 000100 to Matheson Decl. Later, at 3:11 p.m., a call was dispatched to the San Francisco Police Department ("SFPD") regarding Nuriddin's AWOL/escape. Event History Detail SFPD CAD (Ex. B) to Buelna Decl. (CCSF_Nuriddin 000421) [Docket No. 92-1]. Nuriddin was not found until the next morning, when her body was discovered inside a construction site. SAC ¶ 21.

On October 27, 2015, Porter filed a government claim against CCSF arising out of Nuriddin's death, along with an evidence preservation request. Claim against CCSF [Docket No. 68-2]. Following CCSF's denial of the claim, Porter filed the instant lawsuit on July 8, 2016. Compl. [Docket No. 9].

The parties engaged in discovery. Porter served RFP Set One. Relevant to the instant dispute, RFP No. 9 requests that CCSF produce "ALL San Francisco General Hospital DOCUMENTS PERTAINING TO Haneefah Nuriddin's absence and/or death." RFP No. 9 (Ex. A) to Joint Discovery Letter ("JDL") [Docket No. 89-1]. CCSF served objections and responses, and produced medical records, SFPD CAD audio files and records, and SFSD's Incident Report. JDL at 4; Matheson Decl. ¶ 2.

Sometime in 2017, Porter requested copies of the audio recording of Okupnik's April 30,

2015 telephone call to SFSD that reported Nuriddin's AWOL/escape (the "Okupnik call"). CCSF produced additional SFPD and SFSD dispatch and audio recordings, and a CAD transcript in November 2017 and January 2018. JDL at 4; *see* Event History Detail SFPD CAD (Ex. B) (CCSF_Nuriddin 000421) and CAD Audio Recording of Herrera (Ex. C) to Buelna Decl. However, it did not produce a recording of the Okupnik call.

On May 2, 2018, CCSF served a supplemental response to RFP Set One, No. 9, stating that it was unable to produce a copy of the Okupnik call, because the audio recordings "were erased on or about April 30, 2017" pursuant to ZSFGH's retention policy. CCSF's Suppl. Resp. to RFP No. 9 (Ex. A) to JDL.

The parties thereafter met and conferred about all pending discovery disputes, including the erased Okupnik call and CCSF's failure to provide a privilege log for its responses to other RFPs. They were unable to resolve these issues.

On July 3, 2018, the parties filed the instant Joint Discovery Letter, in which Porter moves for sanctions against CCSF for its failure to preserve the Okupnik call, and to compel production of all documents responsive to RFP Set No. 3, Nos. 14, 16-17, including privileged documents, due to CCSF's failure to produce a privilege log.[1]

On July 19, 2018, the court ordered the parties to submit all facts supporting the spoliation motion in evidentiary form. [Docket No. 91]. The parties timely filed their submissions. [Docket Nos. 92-95]. CCSF also filed an administrative motion to seal Exhibits A and F. [Docket No. 95].

The court held a hearing on August 23, 2018. At the hearing, the court ordered the parties to meet and confer immediately on the scope of RFP Set No. 3, Nos. 14, 16, and 17, and to file a joint letter setting forth their agreements by the following day. [Docket No. 100]. The parties timely filed a joint letter containing their agreements regarding the scope of production for those RFPs. [Docket No. 103].

---

[1] Porter also moves to compel RFP Set No. 4 on the same ground. However, in light of the representations made by CCSF's counsel at the hearing, this portion of the motion appears to be moot. At the hearing, CCSF's counsel stated that CCSF did not withhold any documents on the basis of privilege in responding to RFP Set No. 4. [Docket No. 100]. Accordingly, the court addresses Porter's motion to compel only as to RFP Set No. 3, Nos. 14, 16-17.

## II. DISCUSSION

### A. Spoliation

Porter moves for Rule 37(e) sanctions, arguing that CCSF intentionally erased the Okupnik call despite its obligation to preserve that evidence. Porter seeks an adverse inference jury instruction, declarations attesting to the spoliated evidence, and/or reasonable attorneys' fees and costs incurring in bringing the sanctions motion. CCSF does not dispute that Okupnik's call was erased. Instead, it argues that sanctions are not warranted because it did not intentionally erase the Okupnik call, and Porter cannot demonstrate any resulting prejudice.

#### 1. Legal Principles

The parties agree that the Okupnik call is electronically stored information or ESI, and that Rule 37(e) governs this dispute. Rule 37(e) sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these criteria are met and the court finds that there is "prejudice to another party from [the loss] of the ESI," Rule 37(e)(1) instructs a court to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

However, if ESI is spoliated and a party "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes the imposition of more severe sanctions including an adverse inference jury instruction. Fed. R. Civ. P. 37(e)(2)(B) (a court may "instruct the jury that it may or must presume the [spoliated] information was unfavorable to the party"). Unlike Rule 37(e)(1), there is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." 2015 Advisory Comm. Notes.

Rule 37(e) does not define "intent." However, the 2015 Advisory Committee Notes to the amendment of Rule 37(e) advise that "[n]egligent or even grossly negligent behavior" is

4

insufficient to show "intent." 2015 Advisory Comm. Notes. Accordingly, courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that the a party purposefully destroyed evidence to avoid its litigation obligations. *See, e.g., First Fin. Sec., Inc. v. Freedom Equity Grp., LLC,* No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding that the defendant's agents acted with intent in deleting text messages based on evidence of an "explicit agreement to avoid communicating electronically," which "suggest[ed] a shared intent to keep incriminating facts out of evidence"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (the plaintiff's conduct was intentional under Rule 37(e) because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (the plaintiff's conduct was intentional under Rule 37(e) where the evidence showed that the plaintiff either purposefully deleted e-mails that showed she might have fabricated the existence of a report that was critical to her lawsuit or purposefully failed to take any steps to preserve the e-mails) (citing cases).

### 2. Analysis

Applying Rule 37(e), the court finds that all three criteria are easily met, and that spoliation has occurred. First, CCSF does not dispute that it had a duty to preserve the Okupnik call and that this duty arose in 2015 when Porter filed a government claim. Fed. R. Civ. P. 37(e); *see First Fin. Sec., Inc.*, 2016 WL 5870218, at *3 ("The duty to preserve evidence begins when litigation is pending or reasonably foreseeable.") (citation and internal quotation marks omitted)). Second, CCSF admits that it did not take reasonable steps to preserve the Okupnik call. At the hearing, CCSF's counsel represented that, aside from forwarding Porter's October 2015 preservation request to ZSFGH, CCSF took no other steps to ensure that the evidence was preserved until Porter requested a recording of the Okupnik call. Indeed, CCSF did not investigate whether the Okupnik call had been preserved until May 2018, nearly a year after it had been erased. Third, the Okupnik call cannot be restored or replaced. ZSFGH is the only entity that maintained a copy of

5

the call, and it erased it. *See, e.g.*, Declaration of SFSD Captain Stephen Tilton ("Tilton Decl.") ¶¶ 3-4 (Ex. G) to Matheson Decl. [Docket No. 94-7] (stating that all calls from [ZSFGH] were maintained by ZSFGH, and SFSD did not retain a copy of the Okupnik call).

CCSF argues that even if spoliation has occurred, sanctions are not appropriate because Porter has not been prejudiced. Porter makes two arguments regarding prejudice. The first is not persuasive, but the second is. In his papers, Porter argued that he suffered prejudice because the audio recording of the call is the only way to definitively establish the time that Okupnik reported Nuriddin's AWOL/escape to SFSD, because the documents produced by CCSF list the same Okupnik call occurring at two different times. CCSF responds that Porter is incorrect, and that the documents correctly list two different calls made to two different law enforcement agencies (SFSD and SFPD), at two different times. The court agrees with CCSF. The record shows the first call occurred at around 2:20-2:25 p.m., and was from Okupnik to SFSD reporting Nuriddin's disappearance. Timeline for Nuriddin (Ex. D) to Buelna Decl. at CCSF_Nuriddin 000450 (showing Okupnik reported Nuriddin's disappearance to SFSD on April 30, 2015 at around 2:20 p.m. - 2:25 p.m. and completed the call at 2:30 p.m.). The second call occurred around 3:11 p.m. and was from an unknown source to SFPD. CAD SFPD Dispatch (Ex. B) to Buelna Decl. (CCSF_Nuriddin 000421) (showing a call or dispatch was sent to the SFPD at 3:11 p.m. to report Nuriddin's disappearance).

At the hearing, Plaintiff's counsel argued that Porter suffered prejudice because the Okupnik call was CCSF's first response to Nuriddin's disappearance, and could contain valuable information not otherwise in the record about her disappearance and CCSF's response. The court agrees. The Okupnik call is the only contemporaneous record of what information was reported to the SFSD about Nuriddin's disappearance, and could contain facts not otherwise known about her disappearance and CCSF's response. Additionally, the call is relevant to a jury's assessment of Okupnik's credibility. Okupnik was acting within the scope of his employment with CCSF when he made the call to SFSD about Nuriddin's disappearance. A jury could find Okupnik more or less credible based on what he said and how he sounded during the call. Accordingly, the court finds that Porter suffered prejudice from the erasure of the Okupnik call.

6

Since spoliation has occurred and Porter has been prejudiced, the court must now determine the appropriate sanction.

Porter requests an adverse inference jury instruction regarding the erased Okupnik call pursuant to Rule 37(e)(2)(B). Rule 37(e)(2)(B) requires a showing of intent to deprive a party of the use of the ESI in the litigation. Fed. R. Civ. P. 37(e)(2)(B). There is no evidence that CCSF intentionally spoliated the Okupnik call. The record shows that CCSF erased the call pursuant to its 2-year ESI retention policy. Declaration of Gregory J. Chase ("Chase Decl.") ¶ 7 (Ex. H) to Matheson Decl. [Docket No. 94-8]. At most, CCSF's behavior amounts to gross negligence, not intentional malfeasance. *See* 2015 Advisory Comm. Notes. At the hearing, Plaintiff's counsel argued that the court should infer intent because CCSF had notice of Porter's request for production of the Okupnik call for some time and did not act on that request until much later, when Porter brought the matter to the court's attention. While CCSF certainly should have done more, and should have acted earlier to preserve a piece of evidence as central as a recording of the dispatch call, there is no evidence that CCSF decided to erase the Okupnik call when it was under pressure to produce it. Therefore, the court finds that an adverse inference jury instruction is not warranted.

Porter also requests that CCSF prepare declarations attesting to the spoliated call, and that the court order CCSF to pay the reasonable attorneys' fees and costs incurred by Porter in bringing the instant motion, pursuant to Rule 37(e)(1). As discussed above, the court has made a finding of prejudice, which is a prerequisite for imposition of Rule 37(e)(1) sanctions. Rule 37(e)(1) provides that a court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Since the Okupnik call cannot be restored or retrieved, and constitutes relevant and material evidence, the court finds that an appropriate sanction is to inform the jury that the call was spoliated. To that end, the court orders that the jury may hear a short factual statement at trial regarding the spoliation of this evidence. The statement should inform the jury that CCSF had a duty to preserve a copy of the Okupnik call, and that despite this duty, the recording of the call was erased and is no longer available. As a result, CCSF's actions have prevented the jury from hearing what Okupnik communicated to SFSD in that call, how he

7

communicated it, and what SFSD said in response to Okupnik.

The court also finds that Porter is entitled to an award of reasonable attorneys' fees and costs that he incurred in preparing and arguing the sanctions motion only. To that end, Plaintiff's counsel shall submit evidence (declarations and detailed billing statements) of the fees and costs incurred as a result of the sanctions motion by no later than **September 19, 2018**. Porter may not include time spent in the meet and confer process, because such work was necessary regardless of whether a sanctions motion ensued. Porter also may not include time spent on the separate motion to compel the RFPs, which is discussed below.

In sum, the court grants Porter's motion for spoliation sanctions, finding that CCSF spoliated the Okupnik call and Porter suffered prejudice as a result. Subject to the discretion and direction of the trial judge, the factual statement set forth above shall be provided to the jury. The court also orders CCSF to pay reasonable attorneys'fees and costs incurred by Porter in bringing the sanctions motion. While this is not a perfect fix, it will cure the prejudice to Porter caused by the spoliation, but goes no further.

### B. Privilege Log

Porter moves to compel the production of all documents responsive to RFP Set No. 3, Nos. 14, 16-17, on the ground that CCSF waived its right to assert privilege by failing to produce a privilege log. CCSF does not dispute that it has not produced a privilege log for its responses to these three RFPs. Instead, it justifies its refusal to produce a privilege log on the ground that it would be unduly burdensome to provide a log given the overbreadth of the RFPs.

#### 1. Legal Principles

Federal Rule of Civil Procedure 26(b)(5) provides that a party withholding information under a claim that it is privileged or subject to protection as trial preparation material must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed. R. Civ. Proc. 26(b)(5). Boilerplate assertions of privilege do not satisfy this requirement. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1148-49 (9th Cir. 2005). "The most common way to

8

[comply with Rule 26(b)(5)] is with a privilege log." *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 239 (N.D. Cal. 2015).

Under Ninth Circuit law, a privilege log must contain (a) the privilege asserted, "(b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *Apple Inc.*, 306 F.R.D. at 238 (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)).

Failure to produce a timely privilege log may result in waiver. *See Burlington N.*, 408 F.3d at 1149. The Ninth Circuit has expressly rejected a "per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit." *Id.* at 1149. Instead, it instructs courts to make waiver determinations on a "case-by-case determination" and to consider the following factors: 1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged"; 2) "the timeliness of the objection and accompanying information about the withheld documents"; 3) "the magnitude of the document production"; and 4) "other particular circumstances of the litigation that make responding to discovery unusually easy. . . or unusually hard." *Id.* at 1149. The Ninth Circuit has explained that "these factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." *Id.*

Although waiver is a harsh sanction, courts have not hesitated to find waiver where a party repeatedly engages in inexcusable or unjustifiable conduct. *See Burlington N.*, 408 F.3d at 1149-50 (affirming waiver where the "[privilege] log [was] not only not filed during the Rule 34 time limit, but was filed five months later," there were no mitigating circumstances, the offending party was a sophisticated corporate litigant, and the untimely privilege log was deficient); *see also Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG (DMR), 2016 WL 2908415, at *3 (N.D. Cal. May 13, 2016) (finding waiver where a party repeatedly and unjustifiably failed to comply with the court's order to provide an adequate privilege log).

### 2. Analysis

Since CCSF has failed to produce a privilege log, the court applies the *Burlington* factors to determine whether it has waived its privilege assertions. As discussed below, the court finds that nearly all the factors weigh in favor of waiver.

The first and second factors examine "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged," and "the timeliness of the objection and accompanying information about the withheld documents." *Burlington N.*, 408 F.3d at 1149. Although CCSF served timely objections, they are boilerplate, and are therefore insufficient to assert claims of privilege or to enable a court to evaluate them. *Id.* at 1148-49. Moreover, CCSF still has not produced a privilege log despite the fact that it served the original responses nearly 5 months ago. Therefore, the court finds that these factors weigh in favor of waiver.

The third factor examines "the magnitude of the document production." *Id.* at 1149. The parties only recently agreed to the scope of RFP Set No. 3, Nos. 14, 16-17. Their agreement appears to be reasonable. Given the nature of the requests as narrowed, it seems unlikely that there are a large number of responsive documents. However, since the court does not know the actual number of documents, the court finds that this factor is neutral.

The fourth factor asks the court to consider "other particular circumstances of the litigation that make responding to discovery unusually easy. . . or unusually hard." *Id.* at 1149. CCSF argues that the overly broad nature of the RFPs made it unduly burdensome to provide a privilege log. This argument is meritless. To the extent that CCSF believed that the RFPs were problematic, it should have met and conferred with Plaintiff to narrow their scope without prompting from the court; if such efforts failed, CCSF should have moved for a protective order under Rule 26(c). *See* Fed. R. Civ. P. 26(c)(1). Additionally, CCSF could have responded to the portions of the RFPs that inarguably are valid, then provided a privilege log as to those responses, and objected to the rest. *See Nguyen v. Biter*, No. 1:11-CV-00809-AWI, 2015 WL 366935, at *3 (E.D. Cal. Jan. 27, 2015) ("[P]arties are required to use common sense and reason in interpreting discovery requests."). Thus, the court finds that this factor weighs in favor of waiver.

10

Applying the *Burlington* factors "in the context of a holistic reasonableness analysis," the court finds that nearly all of the factors weigh in favor of waiver and concludes that CCSF has waived any privilege claims for all documents responsive to RFP Set No. 3, Nos. 14, 16-17, as construed by the parties pursuant to their August 24, 2018 agreement, except for privileged communications involving trial counsel that post-date the filing of the complaint.

The court recognizes that waiver is a severe outcome, but such an outcome is warranted by CCSF's prior actions in this case which render the current circumstances inexcusable. This is not the first time that Porter has argued a waiver of privilege in this case. The court previously admonished CCSF's counsel for failing to provide a timely privilege log earlier this year. On March 22, 2018, the court held a hearing on Joint Discovery Letter, Docket No. 68, in which Porter moved to compel the production of documents listed on a privilege log due to CCSF's belated production of a privilege log. Minute Order [Docket No. 80]. Although the court found that the circumstances presented a "close call" on waiver, it declined to find waiver at that time, given that this was the CCSF's first offense and there were certain mitigating factors. 3/22/18 Hearing Tx. at 12:8-15:10 [Docket No. 96]. However, it explicitly admonished CCSF's counsel for failing to comply with its obligation to provide a timely privilege log. Given the court's explicit warning, CCSF's second failure to provide any privilege log is simply indefensible.

In sum, the court grants Plaintiff's motion to compel, and orders CCSF to produce all documents responsive to RFP Set No. 3, Nos. 14, 16-17, as construed by the parties pursuant to their August 24, 2018 agreement, except for privileged communications involving trial counsel that post-date the filing of the complaint, by no later than **September 19, 2018**.

### III. MOTION TO SEAL

CCSF filed an unopposed administrative motion to seal Exhibits A and F because they contain information about Nuriddin's mental health treatment and diagnoses. [Docket No. 95].

Civil Local Rule 79-5 provides in relevant part that a party seeking to file a document or portions of it under seal must "establish[ ] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . . The request must be narrowly tailored to seek sealing only of sealable material." Civ. L.R. 79-5(b).

11

Although the court agrees that Nuriddin's private medical information is generally entitled to protection from disclosure, CCSF's request to seal the entirety of both documents is not "narrowly tailored to seek sealing only of sealable materials" as required by Local Rule 79-5. There are portions of both documents that do not contain information about Nuriddin's mental health treatment and diagnoses. For example, Exhibit A, the SFSD Incident Report, describes SFSD Herrera's response to the Okupnik call and details his search and investigation. Additionally, while the entries on Exhibit F for 4/27/15 and 4/28/15 discuss unrelated medical conditions which should not be disclosed, the entries for 4/30/15, 5/1/15, and 5/15/15 detail ZSFGH's response to Nuriddin's disappearance, and do not discuss information related to her medical conditions.

Therefore, the court denies CCSF's administrative motion to seal Exhibits A and F without prejudice to refiling a more narrowly tailored request in accordance with this order by no later than **September 14, 2018**.

## IV. CONCLUSION

In conclusion, the court grants Plaintiff's motion for sanctions and motion to compel. The court denies CCSF's administration motion to seal Exhibits A and F without prejudice to refiling a more narrowly tailored request in accordance with this order.

**IT IS SO ORDERED.**

Dated: September 5, 2018



Donna M. Ryu
United States Magistrate Judge